**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

MAY 21 2015

ARTHUR JOHNSTON
BY _____ DEPUTY

UNITED STATES OF AMERICA,       )
*Ex rel.* Jeremy Westfall, Russell )
Bourland, and Richi Lesley      )
                                )
            PLAINTIFFS,         )
                                )
vs.                             )      CIVIL ACTION NO. 3:15cv376 CWR-FKB
                                )
MEDWORX COMPOUNDING, LLC        )
CHRIS GAINES & JOHN DOES 1-10   )
                                )      **TO BE FILED** *IN CAMERA*
                                )      **AND UNDER SEAL**
            DEFENDANTS.         )

---

**QUI TAM COMPLAINT**

---

### I.    SUMMARY INTRODUCTION

1.    This is an action to recover damages and civil penalties on behalf of the

United States of America arising from false and/or fraudulent statements, records, and

claims made by Defendants Medworx Compounding LLC (hereinafter "Medworx"),

Chris Gaines, and all entities associated and/or affiliated with any of said Defendants in

violation of the Federal False Claims Act, 31 U.S.C. § 3729 et seq. and the Anti-Kickback

Statute ("AKS"), 42 U.S.C. § 1320a-7b.

2.    Medworx is a compounding pharmacy.  The allegations, inter alia, involve

fraudulent billing by Medworx for services rendered which resulted from illegal referrals

made by 1099 independent contractor sales representatives, including, but not limited to,

Defendant Chris Gaines and also Brian Senn, who were induced through commission

payments and other production-based kickbacks by Medworx to make those referrals and recommendations for referrals to Medworx.

3.     As a direct, proximate, and foreseeable result of Defendant Medworx and Chris Gaines, and also all 1099 independent contractor sales representatives participating in Medworx's fraudulent scheme, as set forth above and herein, Defendants knowingly caused false or fraudulent claims to be submitted to Medicare and TRICARE programs for reimbursement.

4.     As stated heretofore, Defendant Chris Gaines ("Gaines") is, at all times material, a 1099 independent contractor sales representative involved in this fraudulent scheme.  On information and belief, Gaines formed a company that he has worked through in participating in the fraudulent scheme.  Relators will provide the name of said company once it becomes known by the Relators.

5.     Each Relator in this Complaint has direct and independent knowledge of Medworx's false or fraudulent billing submitted to Medicare and TRICARE.

## II.     PARTIES

6.     Relator Jeremy Westfall ("Westfall") is a citizen of the United States, a resident of the State of Mississippi, over the age of eighteen (18), and is competent.

7.     Relator Russell Bourland ("Bourland") is a resident citizen of the United States, a resident of the State of Mississippi, over the age of eighteen (18), and is competent.

8.     Relator Richi Lesley ("Lesley") is a resident citizen of the United States, a resident of the State of Mississippi, over the age of eighteen (18), and is competent.

9.      The United States is a plaintiff to this action on behalf of the Department of Health and Human Services ("HHS"), the Centers for Medicare Services ("CMS"), and TRICARE, which is another federally-funded health care program.

10.     Medicare is a government health insurance program for those sixty-five (65) years or older, and those with certain disabilities. 42 U.S.C. §§ 426, 426A. Medicare is administered by CMS, which is part of HHS. CMS contracts with private contractors referred to as "fiscal intermediaries," "carriers," and "Medicare Administrative Contractors" ("MAC"), to act as agents in reviewing and paying claims submitted by healthcare providers. *See* 42 U.S.C. § 1395h; 42 C.F.R. §§ 421.3, 421.100.

11.     In order to participate in the Medicare Program as a provider of medical or other health services, providers/suppliers must submit an enrollment application to CMS. This application includes a certification that the provider/supplier will abide by all applicable Medicare laws, regulations, and program instructions, and that payment of a claim by Medicare is conditioned upon the claim and its underlying transaction complying with such laws, regulations, and program instructions. *See* Form CMS-855B, "Medicare Enrollment Application; Clinics/Group Practices and other Suppliers," p.30; Form CMS-855S, "Medicare Enrollment Application: Durable Medical Equipment, Prosthetics, Orthotics, and Supplies (DMEPOS) Suppliers." p.31.

12.     TRICARE is a federally-funded program that provides medical benefits to military personnel, their families, retired veterans, and reservists called to duty. 32 C.F.R § 199 *et seq*. Although TRICARE is administered by the Department of Defense, the regulatory authority establishing the TRICARE program provides reimbursement to individual health care providers applying the same reimbursement requirements and

coding parameters that the Medicare program applies. 10 U.S.C. §§ 1079(j)(2) (institutional providers), (h)(1) (individual health care professionals) (*citing* 42 U.S.C. § 1395, *et seq.*). Like Medicare, TRICARE will pay only for "medically necessary services and supplies required in the diagnosis and treatment of illness or injury." 32 C.F.R. § 199.4(a)(1)(i). Like the Medicare program, TRICARE prohibits practices such as submitting claims for services that are not medically necessary, consistently furnishing medical services that do not meet accepted standards of care, and failing to maintain adequate medical records. 32 C.F.R. §§ 199.9(b)(3)-(b)(5).

13.     Medworx Compounding LLC is a limited liability company organized and existing under the laws of the State of Mississippi, whose principal place of business is located at 950 E. County Line Road, Suite A in Ridgeland, Mississippi 39157. Medworx, as previously stated heretofore, is a compounding pharmacy.

14.     Chris Gaines is an adult resident citizen of the United States, a resident of the State of Tennessee, who resides in Davidson County in Nashville, Tennessee.

### III.     JURISDICTION AND VENUE

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, 28 U.S.C. § 1367 and U.S.C. § 3732.

16.     This Court may exercise personal jurisdiction over Defendants Medworx and Chris Gaines, pursuant to 31 U.S.C. § 3732(a), because Defendants transact business in the Southern District of Mississippi.

17.     Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because Defendant Medworx is situated in, and transacts business in, the Southern District of Mississippi, and Defendant Gaines transacts business in the Southern District of

4

Mississippi.  In addition, the False Claims Act violations, as alleged herein, occurred, and continue to occur, in whole or in part, in this District.

18.    Before filing this Complaint, the Relators served a copy of same upon the United States, together with a written disclosure statement setting forth and enclosing all material evidence and information they possess, pursuant to the requirements of 31 U.S.C. § 3730(b)(2).

19.    Relators are the original source of, and have direct and independent knowledge of, all publicly disclosed information on which any allegation herein might be deemed based, and have voluntarily provided such information to the Government before filing this action.

## IV.    LAW

### A.    The Federal False Claims Act

20.    The Federal False Claims Act ("FCA") provides, among other things, that any person who (1) "knowingly makes, uses, or causes to be presented, a false or fraudulent claim for payment or approval," or (2) "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" or (3) "conspires to commit a violation of subparagraph (A) [or] (B) is liable to the United States for a civil monetary penalty plus treble damages." 31 U.S.C. §§ 3729(a)(1)(A)-(C).

21.    The term "knowingly" means "that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. §§ 3729(b)(1)(A)(i)-(iii).  Proof of specific intent to defraud is not required.  U.S.C. §§ 3729(b)(1)(B).

22.     The term "claim" means "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that (1) is presented to an officer, employee, or agent of the United States; or (2) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the Unites States Government (a) provides or has provided any portions of the money or property requested or demanded; or (b) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested of demanded..." 31 U.S.C §§ 3729(b)(2)(A)(i)-(ii).

23.     "[T]he term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C § 3729(b)(4).

### B.     The Anti-Kickback Statute

24.     The federal Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b, makes it a criminal offense to "knowingly and willfully" offer, pay, solicit, or receive any remuneration to induce, or in return for, referrals or recommendations for ordering of items or services paid for by a federal health care program.  If any purpose of the remuneration is to induce or reward the referral or recommendation of business payable in whole or in part by a federal health care program, the AKS is violated, *i.e.*, a lawful purpose will not legitimize a remuneration that also has an unlawful purpose.

25.     Specifically, the AKS provides:

(1)     whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe or rebate) directly or indirectly, overtly or covertly, in cash or in kind—

      a.   in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service

for which payment may be made in whole or in part under a Federal health care program...

b.  in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a federal health care program

* * *

(2)  whoever knowingly and willfully offers and pays any remuneration (including any kickback, bribe or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person---

a.  to refer an individual to a person or the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a federal health care program.

b.  to purchase, lease, order, or arrange for or recommend purchasing, leasing or ordering any good, facility, service, or item for which payment may be made in whole or in part under a federal health care program...

42 U.S.C. § 1320a-7b(b).

26.     Specific intent is not required to establish a violation of the AKS. That is, "a person need not have actual knowledge of [the AKS] or specific intent to commit a violation of [the AKS]." 42 U.S.C. § 1320(a)-7b(h).

27.     A "federal health care program" is defined at 42 U.S.C. § 1320a-7b(f) as any plan or program providing health benefits funded, whether directly or indirectly, by the United States Government. The Anti-Kickback Statute applies to funds received by the Defendant from government healthcare programs, including Medicare and TRICARE.

28.     Violations of the statute can subject the perpetrator to exclusion from participation in federal healthcare programs and to civil penalties of $50,000 per violation

and three times the amount of remuneration paid.  42 U.S.C.  § 1320a-7(b)(7) and 42

U.S.C. § 1320a-7a(a)(7).

29.     None of the "safe harbors" to the AKS are applicable here.  *See* 42 C.F.R.

§ 1001.952; *See* 26 U.S.C. § 3121(d)(2).

### 1. Violations of the Anti-Kickback Statute Forms the Basis of FCA Liability

30.     Congress has long viewed the elimination of kickbacks as central to any

efforts to combat fraud and abuse.  *See United States v. Greber*, 760 F.2d 68, 70-71 (3rd

Cir. 1985).  Because kickback schemes usurp the providers' medical judgment and

thereby negatively affect the integrity of the federal healthcare programs, the United

States has a strong interest in ensuring the continued viability of False Claims Act actions

to deter and redress healthcare fraud predicated upon kickbacks.  *United States ex rel.*

*Charles Wilkins and Daryl Willis v. United Health Group, Inc., et al.*, (3d Cir. 2010) (No.

10-2747) (Brief for the United States as Amicus Curie Supporting Appellant) ("Amicus

Brief").  To protect against the erosion of patient care and patient safety, courts uniformly

agree that compliance with the AKS is a material condition of payment under Medicare.[1]

31.     Moreover, these and other courts have held that a person or entity who

violates the AKS and submits a claim or causes another to do so has violated the False

Claims Act, regardless of what form the claim or statement takes.  Many of these courts

have reasoned that the claims are false, and thus violate the FCA, because there is a false

---

[1] *See United States et al. ex rel. Westmoreland v. Amgen, Inc.*, 2011 U.S. App. LEXIS 15036 (1st Cir. July 22, 2011); *United States ex rel. Hutcheson v. Blackstone Medical, Inc.*, 2011 U.S. App. LEXIS 10972 (1st Cir. June 1, 2011); *United States ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 243 (3rd Cir. 2004); *Unites States ex rel. Conner v. Salina Regional Health Ctr.*, 543 F.3d 1211, 1223 n.8 (10th Cir. 2008); *United States ex rel. McNutt v. Haleyville Medical Supplies* 423 F.3d 1256, 1259-1260 (11th Cir. 2005); *United States v. Rogan*, 459 F. Supp. 2d 692, 717 (N.D. Ill. 2006), aff'd, 517 F.3d 449 (7th Cir. 2008).

certification—either express or implied—as to compliance with the AKS each time a claim is submitted.[2]

32.     In 2010, under the Patient Protection and Affordable Care Act, Congress amended the AKS to expressly clarify that a violation of the AKS constitutes a per se FCA violation. *See* Pub. L. No. 111-148, § 6402(f)(1), 124 Stat. 119 (2010) (codified at 42 U.S.C. § 1320a-7b(g)).

## V.     GENERAL ALLEGATIONS

33.     Compounding is a practice in which a licensed pharmacist, a licensed physician, or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combines, mixes, or alters ingredients of a drug to create a medication tailored to meet the needs of an individual patient.

34.     Medworx, through its compounding pharmacy operation, creates, among other things, pain creams, scar creams, erectile dysfunction creams and multi-vitamins for Medicare and TRICARE patients. In an effort to increase sales of its compounding products, Medworx pays 1099 independent contractor sales representatives to induce them to 1) solicit physicians to write Medworx prescriptions ("scripts") to patients and soldiers and 2) arrange for, and recommend, that soldiers purchase Medworx products. Medicare and/or TRICARE then reimburses Medworx for these prescriptions. More

---

[2]   *See, e.g., United States* v. *Rogan,* 157 F.3d 449, 452 (7th Cir. 2008); *United States ex rel. Thompson* v. *Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 902 (5th Cir. 1997); *United States ex rel. Schmidt* v. *Zimmer, Inc.,* 386 F.3d 235, 245 {3d Cir. 2004); *Mason* v. *Medline Industries, Inc.,* 2010 WL 653542, at *5-9 (N.D. Ill. Feb. 18 2010); *United States ex rel. Jamison* v. *McKesson Corp.,* 2009 WL 3176168 (N.D. Miss. Sept. 29, 2009); *In re Pharmaceutical Indus. Average Wholesale Price Lite.,* 491 F. Supp. 2d 12, 17-18 (D. Mass. 2007); *United States ex rel. Biden* v. *Lewis,* 264 F. Supp. 2d 612, 615-16; *United States ex rel. Franklin* v. *Parke-Davis* 2003 WL 20048255 (D. Mass. Aug. 22, 2003); *United States ex rel. Pogue* v. *Diabetes Treatment Centers of America,* 238 F. Supp. 2d 258, 264 (D.ED. 2002); and *United States* ex *rel. Bartlett* v. *Tyrone Hospital, link.,* 234 FORD. 113, 121 (WAD. Pa. 2001).

specifically, Medworx pays 1099 independent contractor sales representatives to induce such representatives to solicit doctors to write scripts for these patients on Medworx script pads, which results in the Medicare or TRICARE patients, who allegedly need the compounded product(s), filling the scripts with Medworx.  In addition, in an effort to induce patients to purchase its compounding products, Medworx pays 1099 independent contractor sales representatives to induce such representatives to recommend that soldiers (and arrange for soldiers to) contact a physician for the purpose of requesting that the physician write the patient a script for Medworx products.  Medworx further pays the 1099 independent sales representative to recommend that the soldier (and arrange for the soldier to) have the scripts for such products filled at Medworx.

35.    These doctors, because of their relationships with these 1099 sales representatives, invariably route these patients to Medworx.  As such, the 1099 sales reps, essentially, and as a matter of fact, determine which compounding pharmacy will fill the scripts for the patients.

36.    Medworx induces these 1099 sales reps to refer the company these Medicare and TRICARE patients by paying them commissions and other production-based compensation kickbacks.  Because these 1099 sales reps are not bona fide employees of Medworx, and because there is no "safe harbor" exception that applies to 1099 sales reps being paid in this way, this activity of Medworx is a clear violation of the Anti-Kickback and False Claims Act statutes.  The activity of each and every 1099 independent contractor sales reps is also inviolate of the Anti-Kickback and False Claims Act statutes.

37.     Once Medworx receives payments from Medicare and TRICARE, which are made periodically, the company deposits the payments in an account.  Medworx keeps a portion of these Medicare and TRICARE payments.  Out of these proceeds, Medworx, in turn, sends the kickback payments to the 1099 independent contractor sales representatives as follows---Medworx ("A"), again, keeps part of the payments.  It then sends the remainder (the kickbacks) via checks to the few 1099 reps ("B"s) who report directly to Medworx.  Each of these few reps ("B"s) deposits the check he receives from Medworx into the business entity he created to carry out the fraud.  Each of these 1099 reps ("B"s) keeps a portion of the kickback (from Medworx) for themselves and then sends the remainder of the kickback to the 1099 reps that he was induced by Medworx to recruit ("C"s); each of these 1099 reps (the "C"s) deposits the check he receives into the business entity he created to further carry out the fraud; the check he (one of the "C"s) receives from the 1099 who recruited him (one of the "B"s) is in an amount that covers both his kickback from Medworx and also all of the 1099 reps that he recruited (the "D"s) as a result of being induced by Medworx to do so.  The process continues until each and every 1099 rep has been paid his kickback for each and every patient referral to Medworx.  Medworx has a software program that tracks exactly how much each 1099 rep is to be paid (given a kickback) out of the Medicare and/or TRICARE payments who is participating in the scheme.

## VI.     SPECIFIC ALLEGATIONS

38.     On or about January 15, 2015, Bourland received a call from Brian Senn ("Senn").  Senn is a colleague of Bourland's, Jeremy Westfall's, and Richi Lesley's in the medical sales industry.

39.     Senn is, and at all material times was, a 1099 independent contractor sales representative participating in the scheme described in this Complaint.  Senn operates under the entity B2 Medical, LLC.  Senn was recruited into the fraudulent scheme by Defendant Chris Gaines, another 1099 independent contractor sales representative, to carry out the fraud against Medicare and TRICARE.

40.     Senn informed Bourland of the Medworx scheme described in this Complaint.  Bourland recorded two of the conversations that he had with Senn, wherein Senn lays out the Medworx scheme described in this Complaint.

41.     Senn encouraged Bourland to become a 1099 sales representative "under him" and for Medworx.

42.     Senn advised Bourland that he should begin to contact soldiers and the families of soldiers to encourage and recommend them to get prescriptions for certain compounding creams that were sold by Medworx.  Those products included pain creams, scar creams, erectile dysfunction creams and multivitamins.

43.     Senn advised Bourland that, in exchange for such efforts, Medworx would pay Bourland a percentage of the reimbursements that Medworx received from Medicare and TRICARE.

44.     Senn also advised Bourland that he should begin to contact physicians to solicit, recommend and arrange for such physicians to write scripts for certain compounding creams sold by Medworx.  Again, Senn advised Bourland that, in exchange for such efforts, Medworx would pay Bourland via Senn's company a percentage of the Medicare and TRICARE reimbursements received by Medworx.

45.     As stated heretofore, Medworx uses a software program that tracks all prescriptions written as a result of the 1099 sales representatives' efforts described in this Complaint. This software program is available to each of the 1099 sales representatives, so that he may see the amounts of his commissions. The software program calculates the amount that the sales representative will receive from Medworx for each of the prescriptions that the sales representative causes to be written and filled as a result of his efforts to solicit, arrange and recommend Medworx scripts.

46.     In an effort to encourage Bourland to engage in the scheme, Senn showed Bourland a picture from the software system revealing that Senn was receiving $150,000 from Medworx in exchange for nine (9) Medworx prescriptions being filled due to Senn's efforts to solicit, recommend and arrange for Medworx scripts. All nine (9) prescriptions were written for only one (1) family, which consisted of a man, his wife, and their child. The prescriptions came with eleven (11) refills, which will result in the government paying $1,800,000 for one (1) year of these prescriptions being filled. See the photograph attached hereto as Exhibit I.

47.     Following the instructions of Senn, shorly thereafter Bourland contacted his brother, Michael Todd Spears, who is a soldier. Bourland recommended that his brother seek a prescription for a multi-vitamin supplement and two compounding creams sold by Medworx; namely, a scar cream and a pain cream. Bourland provided Senn with necessary personal information for his brother. Senn took that information and submitted it to a physician who wrote a prescription for Bourland's brother for the pain and scar creams and multi-vitamin supplement. These prescriptions were filed by Medworx on January 23, 2015. Medworx was paid for these creams by TRICARE. Notably,

Bourland's brother was never even contacted by the doctor of the doctor's staff who prescribed the prescriptions for Bourland's brother.

48. Soon after providing Senn with this information, Bourland's brother received the scar cream, pain cream, and multi-vitamin supplement in the mail. A photograph of the prescriptions and medications are attached as Exhibit II. The prescriptions show that the creams were manufactured by Medworx and submitted to TRICARE for payment.

49. The Medworx software program identified Bourland's brother's prescriptions as one being paid for by TRICARE and as costing $23,064.82 (multi-vitamin supplement) and $18,543.73 (scar cream) and $9,646.83 (pain cream) for one month's prescription for each, totaling $51,255.38; these prescriptions came with eleven (11) refills, which will result in the government paying $615,064.56 for one year of these prescriptions being filled. See a photograph of the Medworx software depicting this transaction attached as Exhibit III.

50. Medworx paid portions of the TRICARE reimbursement for this transaction to Senn and Bourland. Bourland's commission for this transaction was $10,250.99. See a copy of Bourland's March 2, 2015 check related to this transaction attached as Exhibit IV.

51. Bourland will continue to receive $10,250.99 each month that these prescriptions are refilled by his brother. Bourland continues to hold, and has always held, these funds in a separate account in trust for the United States of America.

14

52.   In a further effort to encourage Bourland, Senn has shown Bourland a copy of Senn's February 2015 commission check representing his commissions from Medworx. The check totals $600,641.36. See Exhibit V.

53.   Senn has also informed Bourland that his March 2015 check for Medworx commissions was approximately $1,800,000.00.

## VI.   COUNTS

### COUNT I

### (False Claims Act, 31 U.S.C. § 3729(a)(1) and (a)(1)(A))

54.   Relators repeat and re-allege each allegation in each of the preceding paragraphs as if fully set forth herein.

55.   As a result of the kickbacks paid by Medworx in return for patient referrals, in violation of the federal Anti-kickback Statute, 42 U.S.C. § 1320a-7b(b), all of the claims presented by Medworx to TRICARE and Medicare for prescriptions rendered as a result of such referrals, or for reimbursement based in part on such referrals, are false or fraudulent. Accordingly, Defendants Medworx and Chris Gaines and also every other 1099 independent contractor sales representative involved in the scheme knowingly caused the presentation of and/or knowingly submitted false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1) and (a)(1)(A).

56.   By virtue of the false or fraudulent claims Medworx and Gaines and also every other 1099 independent contractor sales representative presented, or caused to be presented, the United States has suffered actual damages and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

## COUNT II

### (False Claims Act, 31 U.S.C. § 3729(a)(1)(B))

57.    Relators repeat and re-allege each allegation in each of the preceding paragraphs as if fully set forth herein.

58.    Defendants Medworx and Gaines and also every other independent contractor sales representative involved in the scheme made, used, and caused to be made or used, false records or statements to get false or fraudulent claims paid and approved by the United States.

59.    By virtue of the false records or statements used by Medworx and Gaines and also every other independent contractor sales representative involved in the scheme made the United States has suffered actual damages and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

### PRAYER FOR RELIEF

WHEREFORE, Relators request the following relief:

A.    That the Court enter judgment against Defendants Medworx and Gaines and also every other independent contractor sales representative involved in the scheme, as well as all entities associated and/or affiliated with any of said Defendants, in an amount equal to three times the damages suffered by the United States due to the unlawful conduct;

B.    That the Court enter judgment against Defendants Medworx and Gaines and also every other independent contractor sales representative involved in the scheme, as well as all entities associated and/or affiliated with any of said Defendants assessing a civil penalty of no less than $5,500 and no more than $11,000 for each violation of 31 U.S.C. § 3729;

C.    That Relators be awarded the maximum amount of damages allowed by 31 U.S.C. § 3730(d);

D.    That Relators be awarded all costs of this action, including attorneys' fees, costs, and expenses pursuant to 31 U.S.C. § 3730(d);

E.    That the Court award pre and post-judgment interest on any damages awarded to the United States or Relators; and

F.    That the United States and Relators be awarded all such other relief that the Court deems just and proper.

## JURY DEMAND

Relators demand a trial by jury.

Respectfully submitted on May 20, 2015.

Jonathan P. Barrett, MSB #102426
Barrett Law, PLLC
121 Colony Crossing, Suite D
Madison, MS 39110
601-790-1505 office | 769-300-0922 fax

Patrick Barrett, MSB #99369
Barrett Law Office, PLLC
4205 Hillsboro Pike, Suite 303
Nashville, TN 37215

Rick Davis, MSB #99562
Shelton Davis, PLLC
117 Park Circle Drive
Flowood, MS 39232

David Shelton, MSB #99675
Shelton Davis, PLLC
1223 Jackson Ave. East, Suite 202
Oxford, MS 38655

17