**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**UNITED STATES OF AMERICA**                                                **PLAINTIFFS**
*ex rel*. **Jeremy Westfall, Russell**
**Bourland, and Richi Lesley**

**v.**                                          **CIVIL ACTION NO. 3:15cv376-CWR-FKB**

**MEDWORX COMPOUNDING, LLC**
**CHRIS GAINES & JOHN DOES 1-10**                                    **DEFENDANTS**

**UNITED STATES' RESPONSE IN OPPOSITION TO
RELATORS' MOTION FOR SHARE OF ALTERNATE REMEDY**

Relators broadly ask this Court for a ruling that they are entitled to a relator share from

any amounts the United States has obtained from Medworx Compounding "and its agents" in

any proceedings outside of this action.  (ECF No. 64.)  Relators argue that any such proceeds

constitute "alternate remedies" to this case, despite the fact that Relators fail to identify any

proceedings that have resolved the civil fraud claims asserted against the defendants in this

action.  Indeed, Relators continue to pursue those very claims.

In essence, Relators wrongly suggest that their complaint was the catalyst for the United

States' criminal investigation of any related conduct, and, further, that such a role legally entitles

them to share in any restitution and forfeiture from criminal actions.  Although Relators fail to

clearly delineate the scope of their request, they cite the criminal prosecution of an individual

who is not even a defendant in Relators' *qui tam* action, as well as a civil forfeiture proceeding

involving at least 233 different properties—many of which were allegedly tied to criminal

offenses involving compounding pharmacies unrelated to the allegations in Relators' complaint.

Relators' arguments are both legally and factually flawed.  As a legal matter, criminal prosecutions and civil forfeiture proceedings are not alternate remedies to False Claims Act actions.  And as a factual matter, Relators' complaint was not the catalyst for the Governments' criminal investigation, nor did it contribute to the proceedings identified in the Relators' motion.

## BACKGROUND

### I.    THE FALSE CLAIMS ACT

The False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, imposes civil liability on persons who knowingly submit false or fraudulent claims to the federal government for payment. *See* 31 U.S.C. § 3729.  An FCA action may be commenced either by the Government or by a private person—known as a relator—who maintains the action "in the name of the Government." *Id.* § 3730(a), (b)(1).  Suits brought by relators are known as *qui tam* suits, and the Government may choose to intervene.  *Id.* § 3730(b)(2).  In the event the Government declines to intervene, the relator may proceed with the action on behalf of the United States.  *Id.* § 3730(b)(4).

Persons who violate the FCA are liable to the United States for statutory penalties and treble damages.  *Id.* § 3729(a)(1).  A proper relator in a successful *qui tam* action is entitled to a share of the proceeds of his or her civil *qui tam* suit, if any, or a settlement of the claims in his or her action.  *Id.* § 3730(d).

The FCA recognizes the Government's authority to pursue other remedies for civil fraud claims even after a relator has filed a *qui tam* suit.  The FCA's "alternate remedy" provision, 31 U.S.C. § 3730(c)(5), states that "the Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty."  If the Government elects to pursue an alternate remedy based on the same claims alleged by the relator, the relator "shall have the same rights in such

proceeding as such person would have had if the action had continued under [the FCA]." 31

U.S.C. § 3730(c)(5).  This provision affords the United States flexibility in choosing the forum in

which it pursues civil fraud claims against persons who defraud the Government, by authorizing

the Government to pursue those claims administratively rather than through the relator's suit,

while at the same time protecting the relator's rights in the *qui tam* action.

## II.    FACTUAL BACKGROUND

### A.    The Criminal and Civil Forfeiture Proceedings

In early 2015, before Relators filed this *qui tam* action or provided any information to the

United States, the Government commenced criminal investigations relating to Medworx

Compounding and other compounding pharmacies in Mississippi and elsewhere.[1]  Those

investigations were opened independently from—and were not prompted by—Relators'

subsequently filed *qui tam* complaint.

The United States' criminal investigation led to the Government filing a civil forfeiture

complaint on January 20, 2016.  *United States v. Real Prop. Located at 19 Crane Park,*

*Hattiesburg, Lamar Cnty., Miss.*, No. 2:18-cv-165 (S.D. Miss.).[2]  That action sought the

forfeiture of certain properties that were allegedly tied to the criminal offenses being

investigated.  The Government's amended complaint in the civil forfeiture action lists 233

defendant properties.  First Am. Compl., *United States v. Real Prop. Located at 19 Crane Park,*

*Hattiesburg, Lamar Cnty., Miss.*, No. 3:16-cv-27 (S.D. Miss. Feb. 10, 2017), ECF No. 183

(Attached to Relators' motion as Exhibit 2).  As set forth in the amended complaint, the

Government sought forfeiture of those properties because of their ties to alleged criminal

---

[1] Medworx Compounding was a compounding pharmacy located in Ridgeland, Mississippi.

[2] The original case number for the civil forfeiture action was No. 3:16-cv-27.  The case was
subsequently transferred within this district from the Northern to the Southern Division.

offenses carried out by a number of individuals, and involving three different compounding pharmacies. *Id.* In addition to Medworx, the amended complaint described schemes carried out by individuals at Advantage Pharmacy and World Health Industries, Inc., two other Mississippi-based pharmacies. *Id.* The civil forfeiture proceeding is still pending.

The Government's criminal investigations have also led to the prosecution of a number of individuals. Relators' motion cites the prosecution of Thomas Edward Spell, Jr. Spell was a co-owner of Medworx Compounding, as well as other compounding pharmacies. On August 9, 2018, Spell pled guilty to one count of conspiracy to commit health care fraud.[3] *United States v. Spell*, No. 2:18-cr-30 (S.D. Miss.) The criminal information against Spell alleged, *inter alia*, that he and others paid third-party marketers "kickbacks and bribes to obtain prescriptions for compounded medications from prescribers for beneficiaries who were covered by the most lucrative health care benefit programs, including TRICARE."[4] Information, *United States v. Spell*, No. 2:18-cr-30 (S.D. Miss. Aug. 8, 2018), ECF No. 1 ¶ 23 (Attached to Relators' motion as Exhibit 3). Those prescriptions were filled by the various pharmacies owned and operated by Spell and his co-conspirators. *Id.* As part of Spell's sentence, he was ordered to pay $243,550,503 in restitution to TRICARE. Judgment, *United States v. Spell*, No. 2:18-cr-30 (S.D. Miss. Nov. 5, 2019), ECF No. 29 at 6 (Attached to Relators' motion as Exhibit 4). The court also ordered the forfeiture of a number of assets initially sought in the civil forfeiture proceeding discussed above, which, as a result, have subsequently been dismissed from the civil forfeiture action. Corrected Final Order of Forfeiture, *United States v. Spell*, No. 2:18-cr-30 (S.D. Miss.

---

[3] 18 U.S.C. § 1349.

[4] TRICARE is a federal health care program that provides health insurance for active duty military personnel, military retirees, and military dependents.

Jan. 22, 2020), ECF No. 33; Order, *United States v. Real Prop. Located at 19 Crane Park,*

*Hattiesburg, Lamar Cnty., Miss.*, No. 2:18-cv-165 (S.D. Miss. Dec. 4, 2020), ECF No. 311.

### B.  The *Qui Tam* Case

Relators filed this *qui tam* action on May 21, 2015, after the Government's criminal

investigation was underway.  Relators assert claims against defendants Medworx Compounding,

LLC and Chris Gaines.  Their complaint does not contain any claims or allegations against

Thomas Edward Spell, Jr. (who is not even mentioned in the complaint) or any pharmacy other

than Medworx.

Relators' complaint alleges that Medworx paid illegal kickbacks to independent

contractor sales representatives to incentivize them to solicit TRICARE and Medicare

beneficiaries to request prescriptions for compounded drug products (such as compounded pain

and scar creams) that could be filled by Medworx.  (ECF No. 1 ¶ 34.)  The complaint alleges that

those independent marketers were further incentivized to solicit doctors who would agree to

write such prescriptions.  *Id.*  Specifically, the complaint alleges that an individual named Brian

Senn recruited Bourland, one of the Relators, to participate in this scheme.[5]  *Id.* ¶¶ 38-44.  The

complaint alleges that Bourland recruited one active duty military member to seek prescriptions

for multiple compounded drug products, all of which were filled by Medworx.  *Id.* ¶ 47.  The

complaint alleges that Bourland received a kickback for those prescriptions, in the form of a

percentage of the reimbursement Medworx received from TRICARE.  *Id.* ¶ 50.  According to

---

[5] The transcripts Relators provided to the Government, which are referenced in their motion, are transcripts of recordings of two phone calls between Bourland and Senn.

Relators, Defendant Gaines was responsible for recruiting Senn to participate in the alleged scheme. *Id.* ¶ 39.

The limited information contained in the Relators' complaint and disclosure materials[6] did not contribute to the criminal and civil forfeiture proceedings. Nor did any other information Relators provided to the Government. The criminal investigation had commenced a few months prior to the filing of this *qui tam* action. Further, the United States did not even interview or otherwise meet with the Relators in this case until April 2016. By that time, the Federal Bureau of Investigation had already executed extensive searches and seizures at Medworx and other Mississippi pharmacies (in January of 2016) and filed the Government's civil forfeiture action.

As required by the FCA, Relators filed their *qui tam* complaint under seal. Pursuant to 31 U.S.C. § 3730(b)(3), the Court granted several extensions of the seal period in this case, which time was necessary for the Government to determine whether it was appropriate for the United States to intervene and take over this action.[7] On December 20, 2019, the United States notified the Court that it was declining to intervene. (ECF No. 34.) However, as the United States' notice of declination explained, the FCA provides that Relators may maintain this action and pursue their FCA claims on behalf of the United States. 31 U.S.C. § 3730(b)(1), (4). Relators have done so.

---

[6] The False Claims Act requires that, upon filing a *qui tam* complaint, relators provide the Government with a "written disclosure of substantially all material evidence and information" they possess. 31 U.S.C. § 3730(b)(2).

[7] Such extensions of the Government's intervention period are not unusual. Indeed, Congress contemplated that the United States would often need additional time to determine whether intervention in a *qui tam* action is appropriate, and the FCA permits the United States to move for extensions of the seal period. 31 U.S.C. § 3730(b)(3).

Relators served Medworx Compounding with their complaint on or around January 24, 2020. (ECF Nos. 37, 38.) Defendant Gaines was served with Relators' complaint on or around February 5, 2020. (ECF No. 39.) Defendant Gaines filed an Answer on February 26, 2020. (ECF No. 41.) On September 11, 2020, Gaines filed a Motion for Summary Judgment. (ECF No. 48.) Relators have sought additional time to respond to that motion—and deferral of the Court's consideration of that motion—due to the fact that discovery continues. (ECF No. 52.) Defendant Medworx has failed to appear in this action.

## ARGUMENT

Relators seek an order from this Court declaring that they are entitled to a share of any proceeds the United States has recovered from Medworx Compounding or any of its "agents" through any proceedings outside of this *qui tam* action. Specifically, Relators mistakenly contend that a civil forfeiture action brought by the United States and a criminal prosecution against one of Medworx's principals constitute "alternate remedies" under the False Claims Act. Relators' arguments are premised on a faulty interpretation of the FCA's "alternate remedy" provision and a fundamental misunderstanding of the relationship between their *qui tam* complaint and those proceedings.[8]

## I.  THE PROCEEDINGS IDENTIFIED BY RELATORS ARE NOT ALTERNATE REMEDIES.

Relators have not identified, and the United States is unaware of, any proceedings that would constitute alternate remedies to this *qui tam* action. Alternate remedy proceedings are

---

[8] In their motion, Relators state that they are seeking an accounting from the United States of any and all amounts recovered from Medworx "and all representatives and agents of Medworx." (ECF No. 65 at 14.) The United States assumes that Relators are referring to a Federal Rule of Civil Procedure 45 subpoena and *Touhy* request served on the U.S. Attorney's Office for the Southern District of Mississippi on November 9, 2020.

civil or administrative proceedings pursued *in lieu* of a *qui tam* action and which pursue the same civil FCA claims asserted in that action.  In their motion, Relators point to two proceedings: (1) a criminal prosecution against Thomas Edward Spell, Jr., who is not a defendant in this *qui tam* case, and (2) a civil forfeiture proceeding brought to forfeit various properties held by a number of different individuals and entities.  Neither of those proceedings resolved the civil FCA claims asserted in this action, nor do they preclude this civil *qui tam* case from moving forward.

### A.   Spell's Criminal Prosecution Is Not an Alternate Remedy to This Action.

An "alternate remedy" proceeding is one that substitutes for the *qui tam* action.  *See United States ex rel. LaCorte v. Wagner*, 185 F.3d 188, 191-92 (4th Cir. 1999) (explaining that alternate remedy provision applies where another remedy is pursued "in place of the original action").  As the Fifth Circuit has explained, "[t]he word 'alternate,' as used in this context, is defined as 'a choice between two or among more than two objects or courses.'"  *United States ex rel. Babalola v. Sharma*, 746 F.3d 157, 162 (5th Cir. 2014) (citation omitted).  In other words, the alternate remedy provision "assumes that the original *qui tam* action did not continue."  *Id.* at 161 (quoting *LaCorte*, 185 F.3d at 192).

Two cases cited in the Relators' motion are illustrative.  In *United States ex rel. Bledsoe v. Community Health Systems, Inc.*, the Sixth Circuit determined that a civil settlement pursued by the Government *in lieu* of a relator's *qui tam* action asserting the same FCA claims could constitute an alternate remedy because of the preclusive effect of the settlement.  *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc. (Bledsoe I)*, 342 F.3d 634, 649-50 (6th Cir. 2003). Similarly, in *United States ex rel. Barajas v. Northrop Corporation*, the Ninth Circuit reasoned that an administrative suspension and debarment proceeding was an alternate remedy where a *qui tam* action based on the same conduct was precluded from going forward.  258 F.3d 1004,

1012-13 (9th Cir. 2001).  Critical to both of those decisions was the principle of claim preclusion, which prevented the *qui tam* cases from proceeding.  This logically follows from the statute itself, which provides that "the Government may elect to pursue *its claim* through any alternate remedy available to the Government."  31 U.S.C. § 3730(c)(5) (emphasis added).  Notably, "its claim" refers to the Government's civil FCA claim.  The civil claims in this action were not pursued through the prosecution of Spell.

> **i.**     **There are no claims against Spell in Relators' *Qui Tam* action.**

As an initial matter, even if a criminal proceeding could qualify as an alternate remedy in some circumstances, this is not such a case.  The criminal case discussed in Relators' motion was not a prosecution of either of the defendants in this action.  To the contrary, that prosecution was of an individual (Thomas Edward Spell, Jr.) who is not even mentioned in the Relators' complaint.  Relators are not entitled to a share of an FCA recovery from an individual or entity against whom they did not even assert any claims in their *qui tam* complaint.  *See* 31 U.S.C. § 3730(d) (Relator shall receive a share of the "proceeds of the action" or settlement of his "claim").  Thus, even if a criminal proceeding could be considered an alternate remedy (it is not), a criminal proceeding (or indeed any proceeding) against an individual who is not a defendant in the *qui tam* action cannot be, because Relators have not even alleged any claims against that person in their *qui tam* case.  *See United States v. Kurlander*, 24 F. Supp. 3d 417, 425 (D.N.J. 2014) (explaining that criminal action could not be considered an alternate remedy where "it does not purport to recover anything that would be recoverable in the *qui tam* action").  Further, Spell's prosecution, and the restitution he was ordered to pay, was not limited to conduct involving Medworx Compounding, which is the sole subject of Relators' *qui tam* allegations.

In *Bledsoe II*, the Sixth Circuit considered whether a civil settlement between the Government and the *qui tam* defendant was an alternate remedy to the *qui tam* action. *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc. (Bledsoe II)*, 501 F.3d 493 (6th Cir. 2007). The court determined that, because the settlement resolved different conduct from any validly pled claims in the relator's *qui tam* complaint, there was no alternate remedy to which the relator was entitled to a share. *Id.* at 521-23. In *United States v. Bisig*—the sole case cited by Relators in which a court held that a criminal recovery could constitute an alternate remedy—the court appeared to recognize that the relator must have valid claims in the *qui tam* case against the same defendant who was prosecuted in the criminal matter in order to share in the criminal recovery. No. 02-cr-112, 2005 WL 3532554, at *7-8 (S.D. Ind. Dec. 21, 2005) (explaining that, while the criminal defendant was a party to the *qui tam* action, the issue of whether relator had satisfied the FCA's "original source" requirement with respect to those claims remained).

Here, Relators have not pled any claims against Spell. Accordingly, his prosecution cannot be considered an alternate remedy to this action, and so this Court need not even reach the question of whether a criminal prosecution might in some circumstances qualify as such. The alternate remedy provision preserves a relator's rights where the United States pursues the claims pled by the relator through another proceeding. It does not *expand* a relator's rights by permitting him to demand a share of all amounts obtained by the Government from any person in any proceeding that may concern the same subject matter or generally relate to his allegations.[9]

---

[9] Relators note that they served their complaint on Spell in his capacity as the registered agent of Medworx. (ECF No. 65 at 6.) Spell's connection to Medworx does not alter the fact that Relators did not plead claims against him.

10

###### ii.       Criminal proceedings are not alternate remedies.

Even if the criminal prosecution were of one of the *qui tam* defendants, the criminal proceeding still would not be an alternate remedy.  Criminal prosecutions do not pursue civil FCA claims or preclude *qui tam* actions from moving forward.  To the contrary, the FCA expressly contemplates that criminal prosecutions and FCA actions may both be pursued for the same or similar conduct and that a successful criminal prosecution will often facilitate, not replace, an FCA suit.  *See* 31 U.S.C. § 3731(e) (providing that a prior criminal conviction "shall estop the defendant from denying the essential elements of the offense in any [FCA] action which involves the same transaction"); S. Rep. No. 99-345, at 32 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5297 (highlighting Congress's recognition that "[m]any [FCA] suits are brought after criminal litigation involving the same or similar conduct").

Considering the alternate remedy provision in its entirety confirms that criminal proceedings are not alternate remedies.  Congress specifically identified certain administrative proceedings as alternate remedies, while making no reference to criminal proceedings.  Congress's omission of criminal matters while expressly referencing other types of proceedings is particularly notable given that the FCA provides that *qui tam* relators "shall have the same rights" in any alternate remedy proceeding as they would have had in the FCA action.  31 U.S.C. § 3730(c)(5).  Those statutory rights include, among others, the right to call witnesses at trial, participate in discovery, obtain a hearing on any dismissal by the United States, and object to any settlement between the United States and defendants.  It is inconceivable that Congress intended, without expressly saying so, to grant *qui tam* relators the opportunity to play a role in criminal matters, to include calling witnesses, participating in criminal discovery, participating in plea negotiations, and objecting to plea agreements with criminal defendants.  But such would be the

implication of interpreting the statute's reference to "any alternate remedy" to encompass criminal prosecutions.  *United States v. L-3 Commc'ns EOTech, Inc.*, 921 F.3d 11, 28 (2d Cir. 2019) (expressing doubt, for this reason, that alternate remedy provision was meant to include criminal prosecutions).  As more than one court has recognized, the lack of reference to criminal proceedings in this provision is a strong indication that Congress did not intend to include such proceedings as alternate remedies.  *Kurlander*, 24 F. Supp. 3d at 425 ("[T]he history of the separation between civil and criminal proceedings in this nation's legal system is such that had Congress intended otherwise in enacting the civil FCA, it would have said so."); *United States v. Lustman*, No. 05-cr-40082, 2006 WL 1207145, at *3 (S.D. Ill. May 4, 2006) ("Surely Congress would have explicitly specified criminal prosecutions as an 'alternate remedy' if it intended the result urged here.")

Relators point to the House Judiciary Committee Report on the FCA's 1986 amendments in support of their proposition that, despite the statute's language, a criminal prosecution may qualify as an alternate remedy.  (ECF No. 65 at 12 n.1.)  However, to the extent the legislative history supports any conclusion on this point, it suggests the opposite.  The Senate version of the 1986 amendments was ultimately adopted, not the House version.  *United States v. Van Dyck*, 866 F.3d 1130, 1135 n.2 (9th Cir. 2017).  Notably, the Senate Judiciary Committee Report refers to alternate remedies exclusively in terms of civil and administrative proceedings through which the Relator's FCA claims might be pursued.  *Id.*; S. Rep. No. 99-345, at 27.  For example, the Senate Report states that the alternate remedy provision clarifies that the Government "may elect to pursue any alternate remedy for recovery of the false claim which might be available under the *administrative* process."  S. Rep. No. 99-345, at 27 (emphasis added).  It goes on to explain that, "[i]n the event that the Government chooses to proceed *administratively*, the *qui tam* relator

retains all the same rights" and "the district court shall stay the civil action pending the *administrative* proceeding."  *Id.* (emphasis added).  Further, whereas the Senate Report discusses the Government's election of an alternate remedy as an either-or proposition, Congress recognized that FCA suits and criminal prosecutions could *both* be brought for the same conduct. *Compare* S. Rep. No. 99-345, at 27 ("[T]he Government must elect to pursue the false claims action *either* judicially or administratively[.]" (emphasis added)) *with* S. Rep. No. 99-345, at 32 ("Many [FCA] suits are brought after criminal litigation involving the same or similar conduct.").

Relators cite only one case in which a court has concluded that a criminal proceeding constituted an alternate remedy to a *qui tam* action: *United States v. Bisig*, No. 02-cr-112, 2005 WL 3532554 (S.D. Ind. Dec. 21, 2005).  Because criminal proceedings are not alternate remedies, the United States believes that the court's conclusion in *Bisig* was wrong. Nonetheless, *Bisig* is readily distinguishable from the present case.  In *Bisig*, the court found that the relator was responsible for uncovering and alerting the Government to the defendant's fraud. *Id.* at *1, *6.  The court concluded that, under those circumstances, denying the relator a share of the criminal forfeiture in that case, which had exhausted the defendant's assets, would "impede Congress' legislative intent to encourage private citizens to file *qui tam* suits."  *Id.* at *4-6.  Here, the criminal investigation that led to the criminal and civil forfeiture proceedings predated the filing of Relators' *qui tam* complaint.  Relators were not responsible for uncovering the conduct at issue in those proceedings, and they were not the impetus for the Government's criminal investigation.  Nor did the limited information provided by Relators contribute to those proceedings.  Simply put, the concerns motivating the court's decision in *Bisig* (and permeating the Relators' motion) do not exist in this case.  To the contrary, it is inconceivable that Congress

intended a civil *qui tam* relator be given a share of a criminal recovery resulting from a criminal investigation that preceded, and was initiated independently from, the relator's *qui tam* action.

Moreover, it is not necessary to consider criminal prosecutions an alternate remedy in order to adequately incentivize relators. Because criminal matters do not preclude relators from pursuing civil FCA recoveries, their incentives are not decreased. Rather, to the extent a *qui tam* defendant is prosecuted criminally for conduct that overlaps with a relator's allegations, a successful criminal prosecution may facilitate a relator's case, because the *qui tam* defendant would be estopped from denying any essential elements of the offense for which he was convicted. 31 U.S.C. § 3731(e). And to the extent a *qui tam* defendant may ultimately be able to deduct restitution paid in a criminal prosecution as a credit against an FCA damages award, it is the United States' practice, as discussed below, to allow a qualified relator to share in the full FCA damages award after prevailing at trial, including the restitution previously paid.[10]

Other courts have disagreed with the analysis in *Bisig*. For example, in *Lustman*, the court distinguished *Bisig* while also rejecting its reasoning and concluding that a criminal prosecution is not an alternate remedy. 2006 WL 1207145, at *3 & n.1. Similarly, in *Kurlander*, the court rejected the *Bisig* analysis as "unpersuasive because it ignores long-determined fundamentals of our law, civil and criminal." 24 F. Supp. 3d at 423-24. In *Babalola*, the Fifth Circuit left open the question of whether a criminal proceeding might ever qualify as an alternate remedy. 746 F.3d at 161 n.4. However, the court explained that the alternate remedy provision contemplates a proceeding pursued *in lieu* of the *qui tam* action and "assumes that the original *qui tam* action did not continue." *Id.* at 161-62. That is not the case when the Government

---

[10] Additionally, it should be noted that the FCA's *qui tam* provisions are not a guarantee that a defendant is, or will remain, solvent—or that a relator will ultimately recover a bounty as a result of his action.

pursues a criminal prosecution; and the Relators' continued prosecution of their FCA claims demonstrates that it certainly is not the case here.  The fact that the United States declined to intervene in this action in no way suggests a different result.  The FCA gives Relators the right to proceed with their claims, for which the United States remains the real party in interest, and the criminal and civil forfeiture proceedings are no more substitutes for this FCA action than they would have been had the United States intervened in this *qui tam* case and pursued the claims itself.  Indeed, were relators to be awarded a share of any of the recoveries identified in their motion, they would nonetheless be entitled to continue with their FCA claims in this case—and, if successful, they would undoubtedly seek a share of any of those proceeds too.

In *Babalola*, the Fifth Circuit rejected the relator's argument that a criminal prosecution was an alternate remedy where the defendant was indicted prior to the *qui tam* action being filed. *Id.* at 161-63.  The court explained that the criminal prosecution could not have been pursued as an "alternate" to a *qui tam* case that did not exist.  *Id.* at 162.  Here, although the course of the criminal investigation did not result in indictments or forfeiture proceedings until after Relators' *qui tam* case had been filed in the meantime, *Babalola* is nonetheless instructive.  The criminal investigation here began prior to the filing of Relators' complaint—i.e., as in *Babalola*, the Government did not commence the criminal investigation as an alternate means of pursuing the *qui tam* allegations.

Relators' reliance on *United States v. WellCare Health Plans, Inc.*, No. 8:09-cv-203, 2011 WL 4431157 (M.D. Fla. Sept. 21, 2011), is misplaced.  Contrary to Relators' assertion, that case does not suggest that relators "are generally entitled to a share of criminal restitution awards."  (ECF No. 65 at 11.)  The relator in *WellCare* attempted to intervene in a criminal proceeding against the same defendant named in his *qui tam* case, in order to claim a share of the

restitution paid by that defendant.  2011 WL 4431157, at *1.  The court rejected the relator's

attempt to intervene and deferred to the court in the *qui tam* action to determine whether the

relator was entitled to any share of the restitution amount.  *Id.* at *2.  Neither the court nor the

Government suggested in *WellCare* that criminal restitution is an "alternate remedy."  The court

merely noted the Government's acknowledgment that, where the same defendant is the subject of

both a criminal prosecution and parallel *qui tam* suit, the defendant may be entitled to a credit in

the event of a successful FCA damages award for amounts the defendant had already paid as

restitution in the criminal case.  *Id.* (citing U.S. Mem. in Opp'n to Relator's Mot. to Intervene at

9 n.6, *United States v. WellCare Health Plans, Inc.*, No. 8:09-cv-203 (M.D. Fla. Aug. 26, 2011),

ECF No. 22 (Attached to Relators' motion as Exhibit 6)).[11]  In the event a relator prevails at the

trial of his or her FCA case, it is the United States' practice to allow a qualified relator a share of

the full amount of the FCA damages award, which would include the restitution previously paid.

Here, there has been no resolution of Relators' FCA claims and no determination of damages.

Further, it is not at all clear that the restitution the Relators point to in their motion could be

claimed as a damage credit by either of the defendants in this action, including because neither of

them is the defendant in the criminal case.  As explained in Section II below, these are issues that

can only be addressed when and if Relators are first successful in obtaining a recovery on their

FCA claims.

> **B.  The Civil Forfeiture Proceeding Is Not an Alternate Remedy.**

Similarly, the civil forfeiture proceeding identified by Relators is not an alternate remedy

to this FCA action.  Although technically a "civil" proceeding, civil forfeiture is an *in rem* action

---

[11] *See also Van Dyck*, 866 F.3d at 1135 n.3 (noting that defendants in an FCA suit may claim a
damage credit for property previously paid to compensate the United States).

against property allegedly tied to criminal offenses.  *United States v. All Funds Distributed to Weiss*, 345 F.3d 49, 55 (2d Cir. 2003).  The defendant property is forfeited to the Government because of its alleged involvement in criminal activity.  *Id.*  Moreover, forfeiture is not intended to compensate the Government for its loss, but rather serves other purposes.  *See, e.g.*, *United States v. Joseph*, 743 F.3d 1350, 1354-56 (11th Cir. 2014) (whereas restitution seeks to reimburse victims for loss, "forfeiture is meant to punish the defendant by transferring his ill-gotten gains to the United States Department of Justice"); *accord United States v. Sanjar*, 876 F.3d 725, 750-51 (5th Cir. 2017) (noting that, even where Government was the sole victim, "restitution and forfeiture serve distinct purposes").  A civil forfeiture action is not a proceeding against any person or entity to recover damages to the United States for false claims; nor does forfeited property constitute proceeds of any settlement or judgment resolving FCA claims.  As with criminal prosecutions, civil forfeiture is not a substitute for an FCA action, does not resolve civil FCA claims, and does not preclude a *qui tam* case from moving forward.

Moreover, a review of the civil forfeiture complaint cited by Relators reveals at least 233 different assets at issue in that proceeding.  First Am. Compl., *United States v. Real Prop. Located at 19 Crane Park, Hattiesburg, Lamar Cnty., Miss.*, No. 3:16-cv-27 (S.D. Miss. Feb. 10, 2017), ECF No. 183 (Attached to Relators' motion as Exhibit 2).  Much of the property in that action relates to alleged criminal offenses involving entities and individuals other than Medworx. *Id.* (alleging conduct related to three different Mississippi pharmacies: Medworx Compounding, World Health Industries, Inc., and Advantage Pharmacy).  Relators have not identified which specific forfeitures they believe to be an alternate remedy to the present action, and the United States should not be required to speculate about which properties relate to Relators' assertion of an alternate remedy claim.  However, even if a civil forfeiture proceeding could properly qualify

as an alternate remedy, Relators would have no claim to a share of any property obtained from anyone other than the defendants in this *qui tam* action, as discussed in the previous section.  Nor would Relators be entitled to a share of any property forfeited as a result of conduct that does not overlap with the Relators' allegations, such as conduct involving other pharmacies.  *E.g.*, *Bledsoe II*, 501 F.3d at 521-23 (relator was not entitled to share of settlement as alternate remedy where settlement covered conduct that did not overlap with the claims pled by relator); *United States ex rel. Shea v. Verizon Commc'ns, Inc.*, 844 F. Supp. 2d 78, 92 (D.D.C. 2012).

This would be true even if Relators were correct (and they are not) that their *qui tam* complaint was the impetus for the Government's criminal investigation.  As the Eighth Circuit has explained, the FCA entitles relators to a share of the proceeds of "'the claim' brought by the relators, and only that claim."  *United States ex rel. Rille v. PricewaterhouseCoopers LLP*, 803 F.3d 368, 374 (8th Cir. 2015) (en banc).  It does not give relators a right to share in any other recovery, even *if* such recovery resulted from the filing of the relator's complaint.  *Id.*

Although the United States believes that neither the criminal nor civil forfeiture proceedings can be considered alternate remedies, should the Court find otherwise, the Relators should be required to file another motion that identifies which specific forfeitures and/or restitution amounts they believe constitute alternate remedies to this action.  In their present motion, Relators appear to broadly assert entitlement to a share of *any* recovery from Medworx *or any of its agents* in *any* other proceeding—a vague and ill-defined assertion that is clearly inconsistent with both the text and the spirt of the FCA.

## II.     RELATORS' MOTION FOR A RELATOR SHARE IS PREMATURE.

The fact that there has been no alternate remedy does not necessarily mean Relators will not be entitled to a share of any amount previously collected by the Government—including

through restitution—for which the *qui tam* defendants may be entitled to a credit against any damages eventually awarded in this action.  In the event Relators are successful in pursuing their claims against defendants Medworx and/or Gaines, they will be entitled to seek a share of the proceeds of any such settlement or judgment.  31 U.S.C. § 3730(d).  The United States has consistently acknowledged in other cases that, where a defendant is permitted to deduct restitution previously paid to the United States as a credit against an FCA damages award, a qualified relator is entitled to a share of the full damages award, including the restitution previously paid.  *United States v. Wegeler*, 941 F.3d 665, 677 (3d Cir. 2019) (discussing United States' representations to this effect); *United States v. Couch*, 906 F.3d 1223, 1228-29 (11th Cir. 2018) (same); *WellCare Health Plans, Inc.*, 2011 WL 4431157, at *2 (same).  Relators mistakenly suggest that this supports their present motion.  (ECF No. 65 at 11-13.)  This puts the cart before the horse.  A relator's entitlement to a share is derivative of a recovery under the FCA on behalf of the United States.  There has been no resolution of the Relators' FCA claims in this matter, which is a prerequisite to considering any appropriate relator share.  Moreover, it is not at all clear that the restitution and/or forfeiture the Relators point to in their motion could be claimed by defendants Medworx or Gaines as a credit against any damages that may ultimately be awarded for any claims in this action.  Put simply, these are questions that can only be properly addressed when and if Relators are successful with their underlying FCA claims against these defendants.

## III.   RELATORS MUST HAVE A VALID COMPLAINT TO BE ENTITLED TO A SHARE OF ANY ALTERNATE REMEDY.

Courts have repeatedly recognized that, in order to receive a share of any alternate remedy, Relators must first have a valid *qui tam* action.  *E.g.*, *United States ex rel. Godfrey v. KBR, Inc.*, 360 F. App'x 407, 413 (4th Cir. 2010) (relator would not be entitled to a share of any

alternate remedy where his FCA claims failed to meet Fed. R. Civ. P. 9(b)'s pleading requirements); *Bledsoe II*, 501 F.3d at 522-23 ("Absent a valid complaint which affords a relator the possibility of ultimately recovering damages, there is no compelling reason for allowing a relator to recover for information provided to the government."). This is because "a relator's rights in an alternate remedy proceeding are the 'same rights' that the relator would have had if the action had proceeded under the FCA." *United States ex rel. Hefner v. Hackensack Univ. Med. Ctr.*, 495 F.3d 103, 112 (3d Cir. 2007). Because a relator cannot recover in an FCA action that brings legally or factually insufficient claims, he is likewise not entitled to share in any alternate remedy. *Id.*

Defendant Gaines has challenged the sufficiency of Relators' complaint in his pending Motion for Summary Judgment. (ECF No. 48.) The Court has not yet ruled on that motion or otherwise addressed the merits or sufficiency of any claims in this action. Moreover, despite Medworx's failure to appear in this action, Relators have not sought a default judgment. To the extent Relators' complaint is dismissed or insufficient to support a default judgment, the FCA would not afford the Relators a recovery or permit Relators to share in any alternate remedy (since they did not have a valid claim to begin with). Put simply, it is not yet apparent whether Relators would properly be entitled to share in any alternate remedy to this action, even if there were one.

The FCA is not intended to reward relators who file *qui tam* actions and, rather than make an effort to pursue their claims, instead use that action to seek a share of any recovery obtained from other defendants that may generally relate to the *qui tam* allegations. Here, Relators' apparent attempt to seek a share of other recoveries *in lieu* of proceeding with their own claims (or alternatively, as an additional windfall to any share they may ultimately seek in

their own case) is contrary to the carefully crafted incentives underlying the FCA's *qui tam*

provisions.  *Cf. Webster v. United States*, No. 99-1485, 2000 WL 962249, at *3 (4th Cir. July 12,

2000) ("Requiring a *qui tam* plaintiff to make some effort to prosecute her suit in order to

participate in any ultimate recovery results in neither unfairness nor the frustration of

congressional policy. . . .  As we and numerous other courts have observed, '[t]he history of the

FCA *qui tam* provisions demonstrates repeated congressional efforts to walk a fine line between

encouraging whistle-blowing and discouraging opportunistic behavior.'" (quoting *United States*

*ex rel. Springfield Terminal Ry. v. Quinn*, 14 F.3d 645, 651 (D.C. Cir. 1994))).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Relators' Motion for Share of Alternate

Remedy.  Relators broadly assert a vague and ill-defined claim to a share of any proceeds the

Government has obtained in any other proceeding from "Medworx and its agents."   With respect

to the two proceedings specifically discussed in Relators' motion, those proceedings are not

alternate remedies to this action.  Moreover, even if the Court were to determine that those

proceedings could potentially qualify as alternate remedies, Relators have failed to establish that

any portion of the forfeited assets or restitution obtained in those proceedings are alternate

remedies to the claims pled in this case.


Dated: December 10, 2020                                   Respectfully submitted,

                                                           JEFFREY BOSSERT CLARK
                                                           Acting Assistant Attorney General

                                                           D. MICHAEL HURST, JR.
                                                           United States Attorney

                                                           ANGELA GIVENS WILLIAMS
                                                           Mississippi Bar No. 102469

Assistant United States Attorney
501 E. Court Street – Suite 4.430
Jackson, Mississippi 39201
(P) 601-965-4480
(F) 601-965-4409
(E) angela.williams3@usdoj.gov

JAMIE ANN YAVELBERG
NATHAN P. GREEN
Attorneys, Civil Division
Commercial Litigation Branch
Department of Justice
P.O. Box 261, Ben Franklin Station
Washington, DC 20044
(P) 202-305-3669
(F) 202-616-3085
(E) Nathan.P.Green@usdoj.gov

*Counsel for the United States*