IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**UNITED STATES OF AMERICA EX REL.**                                                **PLAINTIFFS**
**JEREMY WESTFALL, RUSSELL**
**BOURLAND, AND RICHI LESLEY**

**V.**                                                                                       **CAUSE NO. 3:15-CV-376-CWR-FKB**

**MEDWORX COMPOUNDING, LLC, CHRIS**                                    **DEFENDANTS**
**GAINES, AND JOHN DOES 1-10**

**ORDER**

The relators filed this *qui tam* action in May 2015. They alleged that Medworx Compounding, LLC was defrauding the United States government through a pharmaceutical kickback scheme. The relators' complaint explained how the scheme operated and how they learned of the fraud.

The government had this action stayed and kept under seal. *See* 31 U.S.C. § 3730(b)(3). For the next four-plus years, it pursued asset forfeiture and criminal cases against Medworx's owners. It has recovered $66.8 million in those proceedings, and it may recover more in the future. The government then declined to intervene in this *qui tam* action.

In the present motion, the relators seek a 27% share of the government's past recovery and any future recovery. Their claim is based upon a section of the False Claims Act that provides, in relevant part:

> [T]he Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty. If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section.

*Id.* § 3730(c)(5); *see also id.* § 3730(d)(2) (setting the relators' finder's fee in government-declined *qui tam* cases at 25% to 30% of the government's recovery).

The government opposes relief. It contends that the FBI was investigating Medworx by February 2015—three months before this suit was filed. It says the relators are not entitled to any funds recovered from Medworx's co-owners because this *qui tam* suit was brought against Medworx as an entity, rather than against the co-owners individually. The government also complains that granting the relators 27% of such a large sum would constitute a windfall and take money away from the true victim of the fraudulent scheme: the government.

The Court has reviewed the record and the applicable law. It is persuaded that the False Claims Act grants the relators a share of the government's recovery in this case, and that a bench trial is necessary to determine an appropriate percentage of recovery.

The government pursued an "alternate remedy" when it had this case stayed and commenced civil asset forfeiture and criminal cases against Medworx's owners. *Id.* § 3730(c)(5). The government achieved its preferred remedy when it recovered $66.8 million (and counting) from the owners. In so doing, it successfully circumvented this previously-filed *qui tam* action. *See United States ex rel. Babalola v. Sharma*, 746 F.3d 157, 163 (5th Cir. 2014) (explaining that where there is "an existing qui tam action," the government's decision "to pursue the case in another proceeding . . . would be an alternate remedy").

The government nevertheless asserts that the relators may only share in a (nonexistent) recovery from Medworx, rather than the millions already recovered from Medworx's owners. But there was no recovery from Medworx precisely because the government elected to pursue the owners individually. In other words, the government learned of a corporate fraud, got the whistleblowers' case stayed, then siphoned for itself the assets the whistleblowers alerted them to.

And in such situations, the government's own procedures explain that the False Claims Act provides a pathway for recovery:

> [S]ome courts may be inclined to find an alternate remedy where a criminal proceeding will recover most or all of a *qui tam* defendant's assets, particularly if the government also stayed the relator's *qui tam* suit in favor of the criminal case. Under such circumstances, a court may conclude that the government deprived the relator of any meaningful opportunity to pursue the *qui tam* suit, and therefore the criminal proceeding was effectively a substitute for that suit. Accordingly, in such circumstances (*i.e.*, where the criminal proceeding will render the defendant without assets to satisfy an FCA judgment, and particularly where the government has stayed the *qui tam* case to pursue the criminal case), it may be appropriate to consider a negotiated resolution of the alternate remedy issue, provided that other bases to challenge the relator's entitlement to a share do not exist.

U.S. Dep't of Justice, Asset Forfeiture Policy Manual at 13-5 (2023). That is exactly what happened here. By law, the relators were barred from pursuing their case while the government pursued its remedy of choice. And now, the government says it should not have to share its bounty. That is not so. Neither the law nor justice dictate such a result.

The government is on firmer footing with its fact-based arguments challenging the size of the relators' share. This Court remains uncertain about the value of the relators' complaint relative to the eventual recovery. It may be that the relators' disclosure and lawsuit supported only a sliver of the recovery. But that inquiry, factual as it is, cannot be adjudicated on the present record.

At present, only one relevant governmental declaration is in the file. *See* Docket No. 184. The Court needs to hear more about the utility of the relators' information before it can arrive at "an amount which the court decides is reasonable." 31 U.S.C. § 3730(d)(2). Whether labeled a "bench trial" or an "evidentiary hearing," a full proceeding is necessary. *See United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 651 (6th Cir. 2003) (remanding for an evidentiary hearing); *Rille v. PricewaterhouseCoopers LLP*, 803 F.3d 368, 374 (8th Cir. 2015) (remanding for findings "about whether there is a factual overlap between the claim or claims settled by the

government and the claims brought by the relators"). Findings of fact and more fulsome conclusions of law will then issue in accordance with Rule 52. Of course, the parties are free and actually encouraged to find common ground.

A final word is owed. The docket shows that the Clerk's Office marked this case as "closed" when the parties settled with co-defendant Chris Gaines. That may have constituted error, as the relators' claims against Medworx remain outstanding. If the relators intend to secure a judgment against Medworx, they should file an appropriate motion within 30 days. If the motion is granted, the Court will conduct an evidentiary hearing on damages alongside the bench trial.

For these reasons, the relators' motion is granted in part and denied in part. A status conference will be scheduled to determine a trial date.

**SO ORDERED**, this the 18th day of March, 2024.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE
